**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **UMB BANK, N.A., as Trustee,**<br>              **Petitioner and Plaintiff**<br><br>v.<br><br>**CITY OF CENTRAL FALLS; JAMES A. DIOSSA, MAYOR OF THE CITY OF CENTRAL FALLS; MARIA RIVERA, CITY COUNCILOR; JONATHAN ACOSTA, CITY COUNCILOR; HUGO FIGUEROA, CITY COUNCILOR; FRANKLIN SOLANO, CITY COUNCILOR; JESSICA VEGA, CITY COUNCILOR; CENTRAL FALLS DETENTION FACILITY CORPORATION, WILDER ARBODELDA, CORPORATION DIRECTOR; GARY BERDUGO, CORPORATION DIRECTOR; JOSEPH MOLINA FLYNN, CORPORATION DIRECTOR; and HERMAN YIP, CORPORATION DIRECTOR.**<br>              **Respondent and Defendants** | C.A. No. 1:19-cv-00182 |

## MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 65

UMB Bank, N.A. (the "Trustee"), as successor indenture trustee for the Bonds (defined below), hereby moves this Court for entry of a temporary restraining order ("TRO"), and thereafter a preliminary injunction, against the Board of Directors and Corporation (each as defined herein), pursuant to Rule 65 of the Federal Rules of Civil Procedure to (i) stay the enforcement of the ICE Suspension (defined herein), and (ii) maintain the status quo during the pendency of this proceeding (the "Motion"). In support of this Motion, the Trustee incorporates by reference its Verified Petition for Receiver and Complaint filed contemporaneously herewith (the "Verified Petition")[1] and respectfully states the following:

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Verified Petition.

1

1. On June 30, 2005, the Corporation issued its $106,380,000 Central Falls Detention Facility Refunding Bonds (The Donald W. Wyatt Detention Facility) Series 2005A (the "Bonds"), as permitted under Title 45, Chapter 54 of the Rhode Island General Laws. The Bonds were issued pursuant to an Indenture of Trust dated June 30, 2005 by and between US Bank, NA (as predecessor Trustee) and the Corporation (the "Indenture"; together with the Indenture and all other documents evidencing or securing the Bonds may be referred to hereafter as the "Bond Documents"). The outstanding principal amount of the Bonds as of the date hereof is $97,300,000 and the accrued interest on the Bonds as of March 31, 2019 is $34,002,984.62. The obligations evidenced by the Bond Documents are be referred to herein as the "Bond Obligations" and any and all collateral securing the Bond Obligations is referred to as the "Collateral."

2. On April 10, 2019, the Trustee filed its Verified Petition against the Central Falls Detention Facility Corporation (the "Corporation"), the City of Central Falls (the "City"), Mayor James A. Diossa (the "Mayor"), City Councilors Jonathan Acosta, Hugo Figueroa, Franklin Solano, and Jessica Vega (collectively, the "City Council"), and the Board of Directors for the Corporation, Wilder Arborelda, Gary Berdugo, Joseph Molina Flynn, and Herman Yip (collectively, the "Board of Directors" and together with the Corporation, City, Mayor and City Council, the "Defendants"), for violations of statutory law, common law, contract, and for declaratory relief.

3. As detailed in the Verified Petition, the Trustee is the Corporation's senior secured creditor and holds a valid and perfected first priority security interest in, and lien on, substantially all of the Corporation's assets pursuant to the Bond Documents. Actions by the Board of Directors and Corporation have harmed and continue to waste the Trustee's Collateral, including the Board of Directors' vote on April 5, 2019 to suspend the ICE Addendum (the "ICE Suspension"). The ICE Suspension vote directs the Corporation to (i) suspend the Corporation's care and supervision of ICE detainees for a period of ninety (90) days, and (ii) transfer to ICE all of its detainees for immediate removal from the Wyatt within seven (7) days of the vote. Thus, if the TRO is not granted, the Corporation is directed to comply with the ICE detainee removal **on or before Friday, April 12, 2019.**

4. Federal Rule of Civil Procedure 65 provides for the issuance of a preliminary injunction under these circumstances. A preliminary injunction is a mechanism that allows the court to prevent further injury pending litigation of a matter on its merits. *Matos ex rel. Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 72 (1st Cir. 2004). In determining whether to issue a preliminary injunction, a trial court weighs several factors: (1) the likelihood of success on the merits; (2) the likelihood of irreparable harm to the movant absent an injunction; (3) the balance of the movant's hardship if relief is denied versus the nonmovant's hardship if the relief is granted; and (4) the effect, if any, of the decision on the public interest. *Maine Educ. Ass'n Benefits Trust v. Cioppa*, 695 F.3d 145, 152 (1st Cir. 2012). Consideration of all four factors weighs in favor of granting preliminary injunctive relief in this matter.

5. First, the Trustee is likely to succeed on the merits of its claims in the Verified Petition. *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir. 1993) (stating that "[t]he *sine qua non* of [the preliminary injunctive] formulation is whether the plaintiffs are likely to succeed on the merits"). R.I. Gen. Laws § 45-54-18 provides that "the [C]orporation is not authorized to do anything which will impair the security of the holders of the obligations of the [C]orporation or violate any agreements with them or for their benefit." Moreover, the Indenture expressly grants the Trustee, in the event of default, the right to file an action "to enjoin any act" which may be unlawful or in violation of the rights of the Owners of the Bonds". Indenture, § 11.2(a)(iv).

6. The Board of Directors' vote to direct the ICE Suspension would be a breach of the USMS Contract[2] and part of an overall goal to dissolve the Corporation in direct violation and

---

[2] In 1993, the Corporation and the USMS entered into an Intergovernmental Service Agreement ("Original IGA"), which was replaced in its entirety in 2018 with that certain "Detention Services – Operational Agreement – Central Falls Detention Facility Corporation", dated March 1, 2018 (the "USMS Contract"). Verified Complaint, Exhibit F. The USMS Contract does not expire by its terms prior to March 1, 2024. *Id*, § A.11. The Corporation and USMS entered into a Modification of Intergovernmental Agreement in January 2019 that expanded the government's use of the Wyatt to include ICE (the "ICE Addendum"). Verified Complaint, Exhibit H.

3

breach of R.I. Gen. Laws § 45-54-18 and the terms of the Bond Documents. The Corporation has no basis for terminating the ICE Addendum. While the Board of Directors have suggested some concerns regarding the treatment of the ICE detainees, there have been no allegations that the Corporation is not complying with the USMS Contract and all federal standards concerning the care and supervision of detainees. Thus, the Trustee is likely to succeed on merits of its Verified Petition against the Corporation and Board of Directors.

7. Second, irreparable harm will occur absent a preliminary injunction. Irreparable harm is established where the movant shows that his "legal remedies are inadequate." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 18 (1st Cir. 1996). "If the plaintiff suffers a substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel." *Id.* at 19 (citing cases). Suspension without agreement from the other contract party (here, the federal government) is just another word for breach and termination. The resulting harm to Corporation for breach of the USMS Contract jeopardizes the Corporation's financial viability as the substantial majority of the Corporation's revenues come from the USMS Contract. Further, the Board of Director's actions are in violation of the Corporation's contractual and statutory obligations.

8. The Bond Obligations are already believed to greatly exceed the value of the Corporation's assets—any further asset deterioration due to the Corporation's actions will be unrecoverable and further harm the Trustee. The potential harm to the Trustee is exacerbated by the City and State efforts to dissolve the Corporation, which would stop the Corporation from operating as a going-concern and have untold effects on the value of the Trustee's Collateral. Courts have found that the risk the moving party will unable to collect on any future judgment, including due to the non-moving party's looming insolvency, constitutes irreparable harm. *See Universal Truck & Equip. Co. v. Caterpillar, Inc.*, 883 F. Supp. 2d 337, 339 (D.R.I. 2012) (citing *Fairview Mach. & Tool Co. v. Oakbrook Int'l, Inc.*, 77 F. Supp. 2d 199, 201, 205 (D. Mass. 1999) (entering a preliminary injunction where the court found that there was "a substantial likelihood that defendant will be unable to pay any ultimate judgment") and *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 52

4

(1st Cir. 1986) (finding support for a preliminary injunction where the issue before the court was "whether injunctive relief restraining the transfer of assets can be granted when the district court finds that the defendant may be insolvent before a final judgment is entered . . .")).

9. Third, a preliminary injunction will impose less of a burden on the Defendants than its absence will impose on the Trustee. On the one hand, implementing a temporary restraining order and thereafter a preliminary injunction merely preserves the status quo as to the Corporation's obligations under its enacting statute, the ICE Addendum and the Bond Documents during the pendency of this proceeding. On the other hand, if the Corporation is permitted to proceed with the ICE Suspension, the Corporation is under directive to immediately relocate approximately 60 detainees (presumably by Friday April 12, 2019), diverting others, and exposing itself to significant litigation from the federal government for the breach of the USMS Contract. If the Defendants are permitted to dissolve the Corporation, the Trustee's Collateral value will plummet as the Corporation is dismantled and shuttered. While there is no legally cognizable "burden" resulting from the Corporation's continued performance of its contractual and statutory obligations to the Trustee and federal government, there would be a substantial burden occasioned by the turmoil that will surely result if the Corporation unilaterally enforces the ICE Suspension, including the immediate relocation of ICE detainees to other unknown locations. Finally, in considering the balance of harms in determining whether to issue an injunction, where the likelihood of plaintiff's success on the merits is great, less weight is to be given to the defendant's loss. *FDIC v. Elio*, 39 F.3d 1239, 1248 (1st Cir. 1994). Here, because the Trustee has shown such a likelihood of success, the Corporation and Board of Directors' chances of suffering any legally-compensable harm are minimal.

10. Fourth, preliminary injunctive relief will promote the public interest. The Corporation's breach of its contractual obligations to the federal government exposes the Corporation to substantial litigation. Further, wasting of the USMS Contract may lead to the closure of the Corporation, loss of over 210 Rhode Island jobs, and a security risk to relocate the remaining detainees to other facilities. In contrast, requiring the Corporation's continued operations in

compliance with the ACA and other governmental regulations does not materially or negatively affect the public interest.

WHEREFORE, all factors weigh in favor of granting a TRO in this matter. The Trustee requests this Court to (a) grant a temporary restraining order and thereafter a preliminary injunction to (i) stay the ICE Suspension, and (ii) maintain the status quo during the pendency of this proceeding, and (b) grant such other and further relief as is just.

Respectfully submitted,

UMB BANK, N.A.,
AS INDENTURE TRUSTEE,

By its counsel,

| MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C. | DUFFY & SWEENEY, LTD |
|---|---|
| /s/ Adrienne K. Walker<br>William W. Kannel (pro hac vice pending)<br>Adrienne K. Walker (pro hac vice pending)<br>One Financial Center<br>Boston, Massachusetts 02111<br>Telephone: (617) 542-6000<br>E-mail: wkannel@mintz.com<br>akwalker@mintz.com | /s/ Robert M. Duffy<br>Robert M. Duffy (RI Bar # 4428)<br>1800 Financial Plaza<br>Providence, Rhode Island 02903<br>Telephone: (401) 455-0700<br>E-mail: rduffy@duffysweeney.com |