# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **UMB BANK, N.A., as Trustee,**<br>                    **Petitioner and Plaintiff**<br><br>**v.**<br><br>**CITY OF CENTRAL FALLS; JAMES A. DIOSSA, MAYOR OF THE CITY OF CENTRAL FALLS; MARIA RIVERA, CITY COUNCILOR; JONATHAN ACOSTA, CITY COUNCILOR; HUGO FIGUEROA, CITY COUNCILOR; FRANKLIN SOLANO, CITY COUNCILOR; JESSICA VEGA, CITY COUNCILOR; CENTRAL FALLS DETENTION FACILITY CORPORATION, WILDER ARBODELDA, CORPORATION DIRECTOR; GARY BERDUGO, CORPORATION DIRECTOR; JOSEPH MOLINA FLYNN, CORPORATION DIRECTOR; and HERMAN YIP, CORPORATION DIRECTOR.**<br>                    **Respondent and Defendants** | C.A. No. 1:19-cv-00182-WES-PAS<br><br><br>ANSWER, COUNTERCLAIMS, AND CROSSCLAIMS OF THE CITY OF CENTRAL FALLS, MAYOR JAMES A. DIOSSA, AND THE NAMED MEMBERS OF THE CITY COUNCIL |

## ANSWER

Now comes the City of Central Falls ("City"), Mayor James A. Diossa ("Mayor Diossa"), and Maria Rivera, Jonathan Acosta, Hugo Figueroa, Franklin Solano, and Jessica Vega, as the named Members of the City Council ("City Council") (together referred to as "City Defendants"), and hereby Answers the Plaintiff UMB Bank, N.A. as Trustee's Verified Petition for Appointment of Receiver and Complaint as follows:

## JURISDICTION

1.    This paragraph contains a statement of law to which no response is required.

2.    This paragraph contains a statement of law to which no response is required.

3.    This paragraph contains a statement of law to which no response is required.

1

## VENUE

4.      This paragraph contains a statement of law to which no response is required.

## PARTIES

5.      The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph.

6.      The City Defendants admit the allegations in this paragraph.

7.      The City Defendants admit that "[t]he corporation is a public corporation, which is an instrumentality and agency of the municipality, but has a distinct legal existence from the municipality, and which has purposes that are consistent with the declaration of purpose set out in this chapter, and which has powers that are necessary and incidental to the effectuation of the stated purposes." G.L. 1956 § 45-54-1(a).

8.      The City Defendants admit the allegations in this paragraph.

9.      The City Defendants admit the allegations in this paragraph.

10.      The City Defendants admit the allegations in this paragraph.

11.      The City Defendants admit the allegations in this paragraph.

12.      The City Defendants admit the allegations in this paragraph.

13.      The City Defendants admit the allegations in this paragraph.

14.      The City Defendants admit the allegations in this paragraph.

15.      The City Defendants admit the allegations in this paragraph.

## FACTS

**A. The Corporation.**

16.      This paragraph contains a statement of law to which no response is required.

17.      This paragraph contains a statement of law to which no response is required.

18. This paragraph contains a statement of law to which no response is required, the document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants admit the resolution was passed by a majority vote of the City Council.

19. The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants admit that the resolution was passed by a majority vote of the City Council.

20. This paragraph contains a statement of law to which no response is required.

21. This paragraph contains a statement of law to which no response is required, but to the extent that a response is required, the City Defendants deny the allegations in this paragraph.

22. This paragraph contains a statement of law to which no response is required.

23. The City Defendants admit that the Corporation is governed by a Board of Directors, that the Mayor has the authority to appoint the directors to the Board with the approval of the City Council, and that the named Defendants in this paragraph are the city resident members of the Board of Directors. The City Defendants deny the remaining allegations in this paragraph.

24. This paragraph contains a statement of law to which no response is required.

25. The City Defendants deny that the Warden has unilateral authority to enter into contracts without the vote of the Board of Directors. The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph.

26. The City Defendants admit the allegations in this paragraph.

27.     The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

28.     The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

29.     The City Defendants admit that the Corporation issued the bonds under the Indenture, and that the City was aware of the issuance of the bonds.  The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

30.     The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

**B.  The Bond Debt.**

31.     This paragraph contains a statement of law to which no response is required, but to the extent that a response is a required, the City Defendants deny the characterization that this is a "primary" power.

    *i.    Indenture.*

32.     The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants deny the allegations in this paragraph.

33.     The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants deny the allegations in this paragraph.

34.     The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

35.     The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants deny the allegations in this paragraph.

36.     The document to which the paragraph refers speaks for itself.  The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

37.     This paragraph contains a statement of law to which no response is required, and the documents to which the paragraph refers speaks for itself.  The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph, but to the extent that a response is required, the City Defendants deny the allegations in this paragraph.

38.     The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants deny the allegations in this paragraph.

*ii.     Open End Mortgage and Security Agreement.*

39.     The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to the nature of the Corporation's mortgage in favor of the Trustee.  The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants deny the allegations in this paragraph.  The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

40.     The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants deny that the USMS contract itself is part of the Mortgage Collateral.

41.     This paragraph contains a statement of law to which no response is required, and the document to which the paragraph refers speaks for itself.  The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

42.     The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants deny the allegations in this paragraph.

43.     The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants deny the allegations in this paragraph.  The City further answers that the Mortgage does not give the Trustee the right have a receiver appointed to take possession of the Mortgage Collateral and stand in the Corporation's shoes.

     *iii.*     *City's Right to Revenues from the Corporation are Subordinate to the Trustee.*

44.     The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

45.     The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves Plaintiff to its proof.

46.     The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the allegations are denied.

47.     The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the allegations are denied.

48.     The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants admit that the initial Indenture speaks to "Impact Fees" being given the priority indicated by the Plaintiff, but the City contends that the City has other rights to payment that have a higher priority as described in the initial Forbearance Agreement entered into by the parties hereto.

49.     The City Defendants deny the allegations in this paragraph.

50.     The City Defendants deny the allegations in this paragraph as written.

**C.  <u>USMS Contract.</u>**

51.     The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

52.     The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

53.     The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph.

54.     The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

55.     The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

56.     The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

57.     The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

58.     The City Defendants admit that the USMS detention is limited to adult males and females, and may not detain juveniles.  The City Defendants deny that the Corporation does not currently detain juveniles at the Wyatt as the City has suspicion that the ages of all the ICE detainees at the Wyatt have not been accurately verified.

59.     The document to which the paragraph refers speaks for itself.

60.     The document to which the paragraph refers speaks for itself.

61.     The document to which the paragraph refers speaks for itself.

62.     The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

63.     The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

**D. ICE Addendum to USMS Contract.**

64. The City Defendants admit the allegations contained in this paragraph.

65. The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

66. The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

67. The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

68. The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

69. The document to which the paragraph refers speaks for itself. This paragraph contains a statement of law to which no response is required.

70. The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph.

71. The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves Plaintiff to its proof.

72.     The City Defendants admit to the transfer of detainees, but is without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves Plaintiff to its proof.

73.     The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the average number of ICE detainees in March 2019 or the fixed per-diem rate received by the Wyatt.  The City Defendants deny the remaining allegations in this paragraph and leaves Plaintiff to its proof.

74.     The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves Plaintiff to its proof.

**E.  The Corporation's Financial Distress Prior to the Forbearance Agreement.**

75.     The City Defendants admit the allegations in this paragraph.

76.     The City Defendants admit the allegations in this paragraph.

77.     The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves Plaintiff to its proof.

78.     The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves Plaintiff to its proof.

**F.  The Keepership and Forbearance Agreement.**

79.     The City Defendants admit that Mayor Diossa was elected Mayor in 2012 and took office in early 2013, but the City Defendants deny the remaining allegations in this paragraph.

80.    The City Defendants admit that since 2013, Mayor Diossa has regularly appointed new members to the Corporations board as necessary, but the City Defendants deny the remaining allegations in this paragraph.

81.    The City Defendants deny the allegations in this paragraph.

82.    The City Defendants deny the allegations in this paragraph.

83.    The City Defendants deny the allegations in this paragraph.

84.    The City Defendants admit the allegations in this paragraph with respect to the Corporations operating revenue.    The City Defendants deny that the Corporation was "operationally solvent."

85.    The City Defendants admit the allegations in this paragraph.

86.    The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph.

87.    The City Defendants admit that the Rhode Island Superior Court appointed Mr. Savage as permanent keeper on September 22, 2014, but the document to which the paragraph refers speaks for itself.

88.    The City Defendants deny the allegations in this paragraph.

89.    The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves Plaintiff to its proof.

90.    The City Defendants admit the allegations in this paragraph.

91.    The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

92.     The City Defendants deny the allegations in this paragraph.

93.     The document to which the paragraph refers speaks for itself.

94.     The document to which the paragraph refers speaks for itself.

95.     The City Defendants admit that it was not a party to the Indenture, and that is a party to the original Forbearance Agreement.  The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants deny the allegations in this paragraph.

96.     The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants admit that it provides for monthly payments to the City of $16,666 after operational and maintenance expenses, and the City Defendants deny the remaining allegations in this paragraph.

97.     The City Defendants deny the allegations in this paragraph.

**G.  Corporation's Performance Under the Forbearance Agreement and Forbearance Amendments.**

98.     The City Defendants admit the allegations in this paragraph.

99.     The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

100.    The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

101.    The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

102. The City Defendants admits that the City received payment and deny the characterization of the pace of the return to prior census levels.

103. The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

104. The City Defendants admit that a USMS detainee escaped from the Wyatt in 2016 and a decrease in detainee levels thereafter. The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph and leaves the Plaintiff to its proof.

105. The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves Plaintiff to its proof.

106. The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves Plaintiff to its proof.

   *i.*   *First Amendment to Forbearance Agreement.*

107. The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves Plaintiff to its proof.

108. The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants deny the allegations in this paragraph and leaves Plaintiff to its proof.

109. The City Defendants admit that it did not enter into the First Amendment to Forbearance Agreement. The City Defendants deny the remaining allegations in this paragraph.

110. The City Defendants admit the allegations in this paragraph, but deny any legal effect of the First Amendment to the Forbearance Agreement as it was modified in breach of the terms of the Forbearance Agreement.

111. The document to which the paragraph refers speaks for itself and the City Defendants deny that the First Amendment to the Forbearance Agreement has any legal effect on the City's write to payment as it was modified in violation of the Forbearance Agreement.

   ii.    *Second Amendment to Forbearance Agreement.*

112. The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

113. The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves Plaintiff to its proof.

114. The document referenced in this paragraph speaks for itself.

   iii.   *Third Amendment to Forbearance Agreement*.

115. The City Defendants admit that the federal government experienced a partial government shutdown. The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph and leaves Plaintiff to its proof.

116.   The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves Plaintiff to its proof.

117.   The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

118.   The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves the Plaintiff to its proof.

119.   The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves Plaintiff to its proof.

120.   The document to which the paragraph refers speaks for itself.

121.   The City Defendants admit that the Mayor and City Solicitor met with counsel for the Corporation.  The City Defendants deny the remaining allegations in this paragraph.

122.   The document to which the paragraph refers speaks for itself.

123.   The document to which the paragraph refers speaks for itself.

124.   The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves Plaintiff to its proof.

125. The City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves Plaintiff to its proof.

     *iv.    Termination of the Forbearance Agreement.*

126. The document to which the paragraph refers speaks for itself.

127. The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants deny the allegations in this paragraph.

128. The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants deny the allegations in this paragraph.

**H.  <ins>"The City's Efforts to Impair the Bonds."</ins>**

129. The City Defendants admit that Mayor Diossa called Albert Gordon to inform him that the actions taken by the Board of Directors was in an improperly noticed meeting and that, in doing so, the Board had violated the Open Meetings Act. Mayor Diossa informed Mr. Gordon of the City's intent to file a complaint with the Attorney General and suggested he call a meeting to remedy the violation to avoid the complaint being filed. The City Defendants deny the remaining allegations contained in this paragraph.

130. The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants deny the allegations in this paragraph.

131. The City Defendants admit the allegations in this paragraph.

     *i.    "The City Refiles the Fink Litigation to Impair the Bonds."*

132. The City Defendants admit that it filed a complaint for declaratory judgment in 2019 similar to its previous claim, but the City Defendants deny the remaining allegations in this paragraph.

ii.    *"The City Council Votes to 'Disapprove' of the Wyatt and Corporation; Takes Steps to Impair Bonds."*

133.   The City Defendants admit a special meeting of the City Council. The document to which the paragraph refers speaks for itself. The City Defendants deny the remaining allegations in this paragraph.

134.   The document to which the paragraph refers speaks for itself.

135.   The City Defendants deny the allegations in this paragraph.

iii.    *"State Representative Introduces Legislation to Dissolve the Corporation."*

136.   The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants deny the allegations in this paragraph.

137.   The City admit City staff discussed potential legislation with Representative Maldonado as it would any other legislation impacting the interests of the City.

138.   The City Defendants deny the allegations in this paragraph.

139.   This paragraph contains a statement of law to which no response is required.

140.   This paragraph contains a statement of law to which no response is required.

141.   This paragraph contains a statement of law to which no response is required.

142.   The document to which the paragraph refers speaks for itself.

143.   The City Defendants deny the allegations in this paragraph.

144.   The City Defendants are without sufficient information to confirm or deny the allegations contained in this paragraph and leave Plaintiff to its proof.

iv.    *The Board of Directors Vote to Suspend the ICE Addendum.*

145.   The City Defendants admit the allegations in this paragraph.

146.   The City Defendants admit the allegations in this paragraph.

147. The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants deny the allegations in this paragraph.

148. The document to which the paragraph refers speaks for itself, but to the extent that a response is required, the City Defendants are without sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and leaves Plaintiff to its proof.

149. The City Defendants admit the allegations in this paragraph.

150. The City Defendants deny the allegations in this paragraph.

## <u>COUNT I</u>
## PETITION FOR APPOINTMENT OF RECEIVER
### *(As against Corporation)*

151. Paragraphs 1-150 of this Answer are hereby incorporated by reference as if state fully herein.

152. The City Defendants deny the allegations in this paragraph.

153. The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

154. The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

155. The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

156. The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

157. The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

158.   The City Defendants deny the allegations in this paragraph.

159.   The City Defendants deny the allegations in this paragraph.

160.   The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

161.   The City Defendants deny the allegations in this paragraph.

162.   The City Defendants deny the allegations in this paragraph.

## COUNT II
## BREACH OF DETENTION CENTER ACT
*(As against City, Mayor, City Council, Board of Directors, and Corporation)*

163.   Paragraphs 1-162 of this Answer are hereby incorporated by reference as if stated fully herein.

164.   The City Defendants deny the allegations in this paragraph.

165.   This paragraph contains a statement of law to which no response is required.

166.   The City Defendants deny the allegations in this paragraph.

167.   This paragraph contains a statement of law to which no response is required.

168.   The City Defendants deny the allegations in this paragraph.

169.   The City Defendants deny the allegations in this paragraph.

170.   This paragraph contains a statement of law to which no response is required.

171.   The City Defendants deny the allegations in this paragraph.

172.   This paragraph contains a statement of law to which no response is required.

173.   The City Defendants deny the allegations in this paragraph.

174.   The City Defendants deny the allegations in this paragraph.

## COUNT III
## BREACH OF INDENTURE
### *(As to Corporation and Board of Directors)*

175.  Paragraphs 1-174 of this Answer are hereby incorporated by reference as if stated fully herein.

176.  The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

177.  The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

178.  The City Defendants admit the allegations in this paragraph.

179.  The City Defendants admit the allegations in this paragraph.

180.  The City Defendants admit notice of termination was sent but denies any allegations as to the validity or appropriateness of the termination of the Forbearance Agreement by the Trustee.

181.  The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

182.  The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

183.  The City Defendants deny that the Plaintiff is entitled to utilize a receiver to usurp control of the Corporation from the Board of Directors under the terms of the Mortgage. The City Defendants neither admit nor deny the  remaining allegations in this paragraph, and leave the Plaintiff to its proof.

184.  The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

185.   The City Defendants deny the allegations in this paragraph.

## COUNT IV
## BREACH OF MORTGAGE
*(As against Corporation and Board of Directors)*

186.   Paragraphs 1-185 of this Answer are hereby incorporated by reference as if stated fully herein.

187.   The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

188.   The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

189.   The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

190.   The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

191.   The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

192.   The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

## COUNT V
## BREACH OF USMS CONTRACT
*(As against Corporation)*

193.   Paragraphs 1-192 of this Answer are hereby incorporated by reference as if stated fully herein.

194.   The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

195. The City Defendants deny the allegations in this paragraph.

196. The City Defendants deny the allegations in this paragraph.

197. The City Defendants admit the Warden entered into the contract, but leaves the Plaintiff to its proof as to the validity of the Warden's actions.

198. The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

199. The City Defendants admit the Warden entered into the addendum, but leaves the Plaintiff to its proof as to the validity of the Warden's actions.

200. The City Defendants deny the allegations in this paragraph.

201. The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

202. The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

203. The City Defendants deny the allegations in this paragraph.

204. The City Defendants deny the allegations in this paragraph.

205. The City Defendants deny the allegations in this paragraph.

206. The City Defendants deny the allegations in this paragraph.

207. The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

208. The City Defendants deny the allegations in this paragraph.

209. The City Defendants deny the allegations in this paragraph.

210. The City Defendants deny the allegations in this paragraph.

211. The City Defendants deny the allegations in this paragraph.

## COUNT VI
### TORTIOUS INTERFERENCE WITH INDENTURE
*(As against City, Mayor, City Council, and Board of Directors)*

212. Paragraphs 1-211 of this Answer are hereby incorporated by reference as if stated fully herein.

213. The City Defendants deny the allegations in this paragraph.

214. The City Defendants deny the allegations in this paragraph.

215. The City Defendants deny the allegations in this paragraph.

216. The City Defendants deny the allegations in this paragraph.

217. The City Defendants deny the allegations in this paragraph.

218. The City Defendants deny the allegations in this paragraph.

## COUNT VII
### TORTIOUS INTERFERENCE WITH MORTGAGE
*(As against City, Mayor, City Council, and Board of Directors)*

219. Paragraphs 1-218 of this Answer are hereby incorporated by reference as if stated fully herein.

220. The City Defendants deny the allegations in this paragraph.

221. The City Defendants deny the allegations in this paragraph.

222. The City Defendants deny the allegations in this paragraph.

223. The City Defendants deny the allegations in this paragraph.

224. The City Defendants deny the allegations in this paragraph.

225. The City Defendants deny the allegations in this paragraph.

## COUNT VIII
### TORTIOUS INTERFERENCE WITH USMS CONTRACT
*(As against City, Mayor, City Council, and Board of Directors)*

226. Paragraphs 1-225 of this Answer are hereby incorporated by reference as if stated fully herein.

227. The City Defendants deny the allegations in this paragraph.

228. The City Defendants deny the allegations in this paragraph.

229. The City Defendants deny the allegations in this paragraph.

230. The City Defendants deny the allegations in this paragraph.

231. The City Defendants deny the allegations in this paragraph.

232. The City Defendants deny the allegations in this paragraph.

233. The City Defendants deny the allegations in this paragraph.

**COUNT IX**
**BREACH OF FIDUCIARY DUTY**
*(Defendants Arbodelda, Bergudo, Molina Flynn, Yip)*

234. Paragraphs 1-233 of this Answer are hereby incorporated by reference as if stated fully herein.

235. The City Defendants admit the allegations of this paragraph.

236. The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

237. The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

238. The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

239. The City Defendants deny the allegations in this paragraph.

240. The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

241.   The City Defendants deny the allegations in this paragraph.

242.   The City Defendants neither admit nor deny the allegations in this paragraph, and leaves the Plaintiff to its proof.

243.   The City Defendants deny the allegations in this paragraph.

244.   The City Defendants deny the allegations in this paragraph.

245.   The City Defendants deny the allegations in this paragraph.

## COUNT X
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### *(As against Mayor Diossa)*

246.   Paragraphs 1-245 of this Answer are hereby incorporated by reference as if stated fully herein.

247.   The City Defendants deny the allegations in this paragraph as written.

248.   The City Defendants admit the allegations in this paragraph.

249.   The City Defendants deny the allegations in this paragraph.

250.   The City Defendants deny the allegations in this paragraph.

251.   The City Defendants admit the allegations in this paragraph.

252.   The City Defendants deny the allegations in this paragraph.

253.   The City Defendants deny the allegations in this paragraph.

254.   The City Defendants deny the allegations in this paragraph.

255.   The City Defendants deny the allegations in this paragraph.

256.   The City Defendants deny the allegations in this paragraph.

## COUNT XI
## DECLARATORY JUDGMENT

257.   Paragraphs 1-256 of this Answer are hereby incorporated by reference as if stated fully herein.

258. This paragraph contains a statement of law to which no response is required.

259. The City Defendants deny the allegations in this paragraph.

260. This paragraph contains a statement of law to which no response is required.

261. The City Defendants deny the allegations in this paragraph.

262. This paragraph contains a statement of law to which no response is required.

263. This paragraph contains a statement of law to which no response is required.

264. The City Defendants deny the allegations in this paragraph.

265. The City Defendants deny the allegations in this paragraph.

266. The City Defendants deny the allegations in this paragraph.

267. The City Defendants deny the allegations in this paragraph.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiff fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

Defendants are immune and the action barred pursuant to G.L. 1956 § 9-33-1 *et seq.*, including G.L. 1956 § 9-33-2, commonly known as the state "Anti-SLAPP" law.

### Third Affirmative Defense

Laches

### Fourth Affirmative Defense

Sovereign Immunity

### Fifth Affirmative Defense

Plaintiff has failed to mitigate damages as required by law.

## COUNTERCLAIMS

Now comes the City of Central Falls ("City"), Mayor James A. Diossa ("Mayor Diossa"), and Maria Rivera, Jonathan Acosta, Hugo Figueroa, Franklin Solano, and Jessica Vega, as the named Members of the City Council ("City Council"), and hereby Counterclaims against the Plaintiff, UMB Bank, N.A. as Trustee, as follows:

## PARTIES

1.     The City of Central Falls ("City") is a municipality within the State of Rhode Island, with its principal place of business at 580 Broad Street, Central Falls, Rhode Island 02863.

2.     James A. Diossa is a natural person and is the elected Mayor of the City of Central Falls, Rhode Island, residing at 315 Central Street, Central Falls, Rhode Island 02863.

3.     Maria Rivera, is a natural person and a member of the City Council for the City of Central Falls, Rhode Island, residing at 324 Hunt Street, Central Falls, Rhode Island 02863.

4.     Jonathan Acosta, is a natural person and a member of the City Council for the City of Central Falls, Rhode Island, residing at 100 Illinois Street, Central Falls, Rhode Island 02863.

5.     Jessica Vega, is a natural person and a member of the City Council for the City of Central Falls, Rhode Island, residing at 54 Parker Street, Central Falls, Rhode Island 02863.

6.     Counterclaim Defendant, UMB Bank, N.A. ("Trustee"), is a national banking association, with its main office located in Kansas City, Missouri, as set forth in its articles of association. UMB Bank, N.A. is the successor trustee under the Indenture and has due authority under the Bond Documents to bring actions to enforce the rights granted thereunder.

## JURISDICTION

7.     This Court has jurisdiction of the Plaintiff's Verified Petition for Appointment of Receiver and Complaint pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. §1331.

8.     There is diversity of citizenship among the parties and the amount in controversy exceeds $75,000.

9.     This Court has jurisdiction over these Counterclaims pursuant to Rule 13 of the Federal Rules of Civil Procedure for the United States District Courts.

**Factual Background Relevant to Counterclaims**

10.     Paragraphs 1-9 of these Counterclaims are hereby incorporated by reference as if stated fully herein.

11.     On or about May 1, 2005, the Corporation entered into a lease agreement with Sanford and Francine Fink, owners of real property located at 935-985 High Street, Central Falls, Rhode Island (hereinafter the "Property") for a term of 15 years.

12.     On or about June 29, 2015, a Notice of Lease was recorded in the Land Evidence Records in Central Falls with regard to the Property.

13.     On or about May 12, 2006, the Finks were granted a tax abatement for the 2006 tax year based upon an application filed identifying the Corporation as the tenant at the Property. At no time relevant hereto did the Corporation or the Finks apply in any subsequent year for the yearly tax abatement for the real estate taxes due and owing on the Property as required by 44-4-4.

14.     Per the terms of the lease, the taxes were to be paid by the Corporation.

15.     On or about June 2010, the City entered into a State Receivership pursuant to G.L. 1956 § 45-9-1, *et seq.*

16.     On or about August, 2011, the duly appointed receiver for the City, Robert J. Flanders, Jr., (hereinafter the "Receiver") petitioned the City into federal bankruptcy pursuant to Chapter 9 of the Federal Bankruptcy Code.

17.     On December 18, 2012, the City filed a Complaint and Request for Declaratory Judgment with this Court naming the Finks and the Corporation as Defendants (hereinafter the "Fink Litigation"). *See* C.A.No.: PC2012-6512 (later consolidated with P.D.2013-2218).

18.     The crux of the issue in the Fink Litigation was whether the Finks or the Corporation were liable to the City for the taxes owed on the Property which was owned by the Finks (not a tax exempt entity) and leased by the Corporation (a tax exempt entity).

19.     As a conditional settlement of the Fink Litigation, the City, the Corporation and the Trustee for the bondholders of the Corporation, U.S. Bank National Association (which was the predecessor in interest to UMB Bank, the Counterclaim Defendant and hereinafter the "Trustee") entered into a Forbearance Agreement (hereinafter the "Agreement") on or about March 30, 2015. *See* Exhibit 1.

20.     The terms of the Agreement required the execution and submission of a "Motion for Conditional Order of Dismissal" requesting that the Fink Litigation be dismissed upon the condition that the Corporation fulfill the terms of Section 2.1 of the Agreement which required it to make certain payments to the City.

21.     The terms of Section 2.1(a) required the Corporation to make a payment of $100,000.00 to the City on or before July 15, 2015.

22.     The Corporation made the required by Section 2.1(a).

23.     The terms of Section 2.1(b) required the Corporation to make payments of $16,666.66 in an amount up to $800,000.00 in the aggregate from "Revenues, to the extent funds are available subsequent to payment of operation and maintenance expenses of the Corporation."

24.     According to the Indenture of Trust pertaining to the Corporation and its bondholders, operating and maintenance expenses are those amounts budgeted by the Corporation costs of the facility.  It does not include debt service or reserve funds.

25.     The terms of Section 2.1(b) clearly require payment to the City ahead of any other expense or obligation of the Corporation following the payments of its operating and maintenance expenses, including debt service on its bonds.

26.     The Corporation made some payments pursuant to Section 2.1(b) and the Conditional Order of Dismissal was filed on June 12, 2015 in the Fink Litigation.

27.     The Corporation suddenly ceased making payments required by Section 2.1(b) on or about August, 2017.

28.     Upon information and belief, the Corporation has generally been making its operational and maintenance expenses since August, 2017.

29.     The City has not been presented with any evidence that the Corporation is regularly unable to meet its operating and maintenance expenses.

30.     As a result of the failure of the Corporation to make the Section 2.1(b) payments, the Corporation has breached the terms of the Agreement.

31.     Further, pursuant to Section 6.3, the parties to the Agreement agreed that the Agreement would not be modified but for the agreement of all the parties thereto, including the Plaintiff. "No amendment, modification, supplement, termination or waiver of or to any provision of this Forbearance Agreement, nor consent to any departure therefrom, shall be effective unless the same shall be in writing and signed by the parties."

32.    Despite the plain language of Section 6.3, the Corporation and the Trustee have modified and amended the Forbearance Agreement on three separate occasions without the written agreement to do so of the City.

33.    The First Amendment to the Forbearance Agreement was entered into by the Corporation and the Trustee without the agreement of the City on May 3, 2017.  *See* <u>Exhibit 2</u>.

34.    The First Amendment changed material terms to the Forbearance Agreement, including the terms of payments due to the City under Section 2.1 of the Forbearance Agreement.

35.    The First Amendment to the Forbearance Agreement altered terms to the Forbearance Agreement that were inducements for the City into entering into the Forbearance Agreement and agreeing to dismiss the Fink Litigation.

36.    This First Amendment was a violation of the plain language of Section 6.3 of the Forbearance Agreement.

37.    Despite the plain language of Section 6.3 of the Forbearance Agreement, the Corporation and the Trustee again modified the terms of the Forbearance Agreement in a Second Amendment to the Forbearance Agreement. *See* <u>Exhibit 3</u>.

38.    The Second Amendment to the Forbearance Agreement was never agreed to in writing by the City.

39.    The Second Amendment to the Forbearance Agreement further indebted the Corporation to the bondholders in the amount of approximately $388,000.00 for certain capital improvements at the prison.

40.    The Second Amendment to the Forbearance Agreement was a violation of the plain language of Section 6.3 of the Forbearance Agreement.

41.     Despite the plain language of Section 6.3, the Corporation held an improperly noticed meeting on January 22, 2019 at which the Corporation and Trustee agreed to a Third Amendment to the Forbearance Agreement without the participation or agreement of the City. *See* Exhibit 4.

42.     The Third Amendment to the Forbearance Agreement extended the term of the Forbearance Agreement without the written agreement of the City.

43.     The Third Amendment to the Forbearance Agreement was a violation of the plain language of Section 6.3 of the Forbearance Agreement.

44.     The meeting notice for the Meeting on January 22, 2019 provided no notice that the Corporation was acting on the Agreement as required under the Rhode Island Open Meetings Act.  *See* § 42-46-1 *et seq*.

45.     One of the modification to the Agreement was to extend the term of the Agreement to July 19, 2019 from January 16, 2019.

<u>COUNTERCLAIM I</u>
**Breach of Contract – First Amendment to the Forbearance Agreement**
*(As against the Trustee)*

46.     Paragraphs 1-45 of these Counterclaims are hereby incorporated by reference as if stated fully herein.

47.     Section 6.3 of the Forbearance Agreement, entitled "Modification," states that the Forbearance entered into by the parties, to which the City is a party, may only be amended or modified "in writing and signed by the parties."

48.     The Trustee and the Corporation breached Section 6.3 on three occasions by amending the Forbearance Agreement without the signature or agreement of the City.

49.     In the First Amendment to the Forbearance Agreement entered into by the Corporation and Trustee on May 3, 2017 whereby the Trustee and Corporation unilaterally altered the terms of the payments to which the City is entitled to under Section 2.1 of the original Forbearance Agreement.  *See* Exhibit 2.

50.     Notably, the First Amendment provides that the payments due to the City under Section 2.1 are suspended for 60 days anytime the Corporation makes a shortfall request to the Trustee.  This is a change of a material term to the Forbearance Agreement as these payments were the primary inducement for the City to dismiss the Fink Litigation.

51.     The Forbearance Agreement constituted a contract between the City and the Trustee.

52.     The Trustee's execution of the First Amendment to the Forbearance Agreement without the agreement of the City constitutes breach of contract.

53.     As a direct and proximate result of said breach of the contract, and its concomitant breach of its implied covenant of good faith and fair dealing, the City has suffered and continues to suffer damages.

54.     WHEREFORE, the City demands judgment against the Trustee in an amount to be determined at trial, sufficient to compensate the City for its damages, interest as provided by law, costs of the action, attorney's fees, and any other relief as this Court deems just and equitable.

### COUNTERCLAIM II
**Breach of Contract – Second Amendment to the Forbearance Agreement**
*(As against the Trustee)*

55.     Paragraphs 1-54 of these Counterclaims are hereby incorporated by reference as if stated fully herein.

56. Section 6.3 of the Forbearance Agreement, entitled "Modification," states that the Forbearance entered into by the parties, to which the City is a party, may only be amended or modified "in writing and signed by the parties."

57. The Trustee and the Corporation breached Section 6.3 on three occasions by amending the Forbearance Agreement without the signature or agreement of the City.

58. The Second Amendment to the Forbearance was approved by the Corporation and Trustee without the City's agreement on March 12, 2018. *See* <u>Exhibit 3</u>.

59. This Second Amendment added more debt to the Corporation from the bondholders to build a new fence around the current one.

60. The City did not agree nor did the City sign the amendment, and thus Section 6.3 of the Forbearance Agreement was breached.

61. The Forbearance Agreement constituted a contract between the City and the Trustee.

62. The Trustee's execution of the Second Amendment to the Forbearance Agreement constitutes breach of contract.

63. As a direct and proximate result of said breach of the contract, and its concomitant breach of its implied covenant of good faith and fair dealing, the City has suffered and continues to suffer damages.

64. WHEREFORE, the City demands judgment against the Trustee in an amount to be determined at trial, sufficient to compensate the City for its damages, interest as provided by law, costs of the action, attorney's fees, and any other relief as this Court deems just and equitable.

**Breach of Contract – Third Amendment to the Forbearance Agreement**
*(As against the Trustee)*

65.     Paragraphs 1-64 of these Counterclaims are hereby incorporated by reference as if stated fully herein.

66.     Section 6.3 of the Forbearance Agreement, entitled "Modification," states that the Forbearance entered into by the parties, to which the City is a party, may only be amended or modified "in writing and signed by the parties."

67.     The Trustee and the Corporation breached Section 6.3 on three occasions by amending the Forbearance Agreement without the signature or agreement of the City.

68.     The Third Amendment to the Forbearance Agreement was also entered into without the agreement of the City on January 16, 2019 to provide a bridge loan to the Corporation, to extend the Term of the initial Forbearance Agreement.  *See* Exhibit 4.

69.     The Third Amendment was passed in a meeting which Attorney General Peter Neronha has determined was a violation of the Open Meetings Law.  *See* Exhibit 5.

70.     Trustee first threatened this very litigation in correspondence sent to the City after the Open Meetings Act complaint was filed.  *See* Exhibit 6.

71.     The City did not agree nor did the City sign the amendment, and thus Section 6.3 of the Forbearance Agreement was breached.

72.     The Forbearance Agreement constituted a contract between the City and the Trustee.

73.     The Trustee's execution of the Third Amendment to the Forbearance Agreement constitutes breach of contract.

74. As a direct and proximate result of said breach of the contract, and its concomitant breach of its implied covenant of good faith and fair dealing, the City has suffered and continues to suffer damages.

75. WHEREFORE, the City demands judgment against the Trustee in an amount to be determined at trial, sufficient to compensate the City for its damages, interest as provided by law, costs of the action, attorney's fees, and any other relief as this Court deems just and equitable.

**COUNTERCLAIM IV**
**"Anti-SLAPP" - Immunity and Bar pursuant to G.L. 1956 § 9-33-1 *et seq.***
*(As against the Trustee)*

76. Paragraphs 1-75 of these Counterclaims are hereby incorporated by references as if stated fully herein.

77. The Trustee has brought this action against the City, the Mayor, and the named Members of the City Council in response to the free expression of disagreement with the policy decisions made by the Wyatt's Warden at the direction of the Trustee on the part of Mayor Diossa and certain members of the City Council.

78. The Mayor and Councilmembers have spoken out against the action of the Corporation and the Warden, as is their First Amendment right to do so.

79. The political advocacy of the Mayor and City Council in expressing their disagreement with the actions by the administration at the Wyatt through the detention of asylum seekers at the Wyatt immediate drew the ire of the Trustee. The Trustee responded immediately to the First Amendment expressions by Mayor Diossa and the Councilmembers with more threats of litigation. *See* Exhibit 6.

80. The expression by Mayor Diossa and the Councilmembers is protected political speech and legislative action.

81. The words of Mayor Diossa and actions of the Councilmembers have had no direct impact on the Trustee, the bondholders, the U.S. Marshall Service contract, or the Corporation. City leaders have merely spoken out against the Corporation on a policy level and the resolutions passed by the Council are symbolic expressions of disagreement with no legal effect.

82. The Trustee's counts filed against the City, Mayor Diossa, and the Councilmembers are meant to silence the First Amendment expression of Mayor Diossa, and the Councilmembers who are speaking on a matter of public concern on behalf of the community they serve regarding an instrumentality and agency of the City.

83. This is precisely the type of speech that is protected by G.L. 1956 § 9-33-1.

84. The Trustee's threat of litigation and damages of $130,000,000.00 is intended to intimidate and pressure Mayor Diossa and the Councilmembers to silence their statements against the Corporation.

85. The Trustee's suit is brought in violation of G.L. 1956 § 9-33-1 *et seq.*, commonly known as the state's "Anti-SLAPP" law.

86. Mayor Diossa's and the Councilmembers' exercise of their right of free speech under the United States or Rhode Island constitutions in connection with a matter of public concern, namely the detention on the ICE asylum-seeking detainee's held at the Wyatt, are conditionally immune from the Trustee's civil claims.

87. The matters discussed by Mayor Diossa and the members of the Council are directly related to the issue of whether the Corporation is meeting its intended purposes as declared by the authorizing resolutions passed by the City Council in August, 1991. These are matters concerning policy decisions made by an instrumentality and agency of the City pursuant to § 45-54-1 *et seq.* and are such matters of public concern.

88.     Such immunity bars the Trustee's civil claims against the City, Mayor, and City Council because they are directed at petition or free speech.

89.     The Mayor's and City Council Members' petition or free speech does not constitute a sham.

90.     WHEREFORE, the City demands judgment against the Trustee, and requests that this Court award it costs and reasonable attorney's fees, including those incurred for the motion and any related discovery matters, as well as compensatory damages and punitive damages as allowed by law.

*[Remainder of page intentionally left blank.]*

## CROSSCLAIMS

Now comes the City of Central Falls ("City"), Mayor James A. Diossa ("Mayor Diossa"), and Maria Rivera, Jonathan Acosta, Hugo Figueroa, Franklin Solano, and Jessica Vega, as the named Members of the City Council ("City Council"), and hereby Crossclaims against the Central Falls Detention Facility Corporation as follows:

## PARTIES

1.     The City of Central Falls ("City") is a municipality within the State of Rhode Island, with its principal place of business at 580 Broad Street, Central Falls, Rhode Island 02863.

2.     James A. Diossa is a natural person and is the elected Mayor of the City of Central Falls, Rhode Island, residing at 315 Central Street, Central Falls, Rhode Island 02863.

3.     Maria Rivera, is a natural person and a member of the City Council for the City of Central Falls, Rhode Island, residing at 324 Hunt Street, Central Falls, Rhode Island 02863.

4.     Jonathan Acosta, is a natural person and a member of the City Council for the City of Central Falls, Rhode Island, residing at 100 Illinois Street, Central Falls, Rhode Island 02863.

5.     Jessica Vega, is a natural person and a member of the City Council for the City of Central Falls, Rhode Island, residing at 54 Parker Street, Central Falls, Rhode Island 02863.

6.     Crossclaim Defendant, Central Falls Detention Facility Corporation ("Corporation") is a public corporation pursuant to G.L. 1956 § 45-54-1, *et seq.*

## JURISDICTION

7.     This Court has jurisdiction of the Plaintiff's Verified petition for Appointment of Receiver and Complaint pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. §1331.

8.     There is diversity of citizenship among the parties and the amount in controversy exceeds $75,000.

9.     This Court has jurisdiction over these Crossclaims pursuant to Rule 13 of the Federal Rules of Civil Procedure for the United States District Courts.

**Factual Background Relevant to Crossclaims**

10.     Paragraphs 1-9 of these Crossclaims are hereby incorporated by reference as if stated fully herein.

11.     On or about May 1, 2005, the Corporation entered into a lease agreement with Sanford and Francine Fink, owners of real property located at 935-985 High Street, Central Falls, Rhode Island (hereinafter the "Property") for a term of 15 years.

12.     On or about June 29, 2015, a Notice of Lease was recorded in the Land Evidence Records in Central Falls with regard to the Property.

13.     On or about May 12, 2006, the Finks were granted a tax abatement for the 2006 tax year based upon an application filed identifying the Corporation as the tenant at the Property.  At no time relevant hereto did the Corporation or the Finks apply in any subsequent year for the yearly tax abatement for the real estate taxes due and owing on the Property as required by 44-4-4.

14.     Per the terms of the lease, the taxes were to be paid by the Corporation.

15.     On or about June 2010, the City entered into a State Receivership pursuant to G.L. 1956 § 45-9-1, *et seq*.

16.     On or about August, 2011, the duly appointed receiver for the City, Robert J. Flanders, Jr., (hereinafter the "Receiver") petitioned the City into federal bankruptcy pursuant to Chapter 9 of the Federal Bankruptcy Code.

17.     On December 18, 2012, the City filed a Complaint and Request for Declaratory Judgment with this Court naming the Finks and the Corporation as Defendants (hereinafter the "Fink Litigation"). *See* C.A.No.: PC2012-6512 (later consolidated with P.D.2013-2218).

18.     The crux of the issue in the Fink Litigation was whether the Finks or the Corporation were liable to the City for the taxes owed on the Property which was owned by the Finks (not a tax exempt entity) and leased by the Corporation (a tax exempt entity).

19.     As a conditional settlement of the Fink Litigation, the City, the Corporation and the Trustee for the bondholders of the Corporation, U.S. Bank National Association (which was the predecessor in interest to UMB Bank, the Counterclaim Defendant and hereinafter the "Trustee") entered into a Forbearance Agreement (hereinafter the "Agreement") on or about March 30, 2015. *See* Exhibit 1.

20.     The terms of the Agreement required the execution and submission of a "Motion for Conditional Order of Dismissal" requesting that the Fink Litigation be dismissed upon the condition that the Corporation fulfill the terms of Section 2.1 of the Agreement which required it to make certain payments to the City.

21.     The terms of Section 2.1(a) required the Corporation to make a payment of $100,000.00 to the City on or before July 15, 2015.

22.     The Corporation made the payment required by Section 2.1(a).

23.     The terms of Section 2.1(b) required the Corporation to make payments of $16,666.66 in an amount up to $800,000.00 in the aggregate from "Revenues, to the extent funds are available subsequent to payment of operation and maintenance expenses of the Corporation."

24.     According to the Indenture of Trust pertaining to the Corporation and its bondholders, operating and maintenance expenses are those amounts budgeted by the Corporation costs of the facility.  It does not include debt service or reserve funds.

25.     The terms of Section 2.1(b) clearly require payment to the City ahead of any other expense or obligation of the Corporation following the payments of its operating and maintenance expenses, including debt service on its bonds.

26.     The Corporation made some payments pursuant to Section 2.1(b) and the Conditional Order of Dismissal was filed on June 12, 2015 in the Fink Litigation.

27.     The Corporation suddenly ceased making payments required by Section 2.1(b) on or about August, 2017.

28.     Upon information and belief, the Corporation has generally been making its operational and maintenance expenses since August, 2017.

29.     The City has not been presented with any evidence that the Corporation is regularly unable to meet its operating and maintenance expenses.

30.     As a result of the failure of the Corporation to make the Section 2.1(b) payments, the Corporation has breached the terms of the Agreement.

31.     Further, pursuant to Section 6.3, the parties to the Agreement agreed that the Agreement would not be modified but for the agreement of all the parties thereto, including the Plaintiff. "No amendment, modification, supplement, termination or waiver of or to any provision of this Forbearance Agreement, nor consent to any departure therefrom, shall be effective unless the same shall be in writing and signed by the parties."

32. Despite the plain language of Section 6.3, the Corporation and the Trustee have modified and amended the Forbearance Agreement on three separate occasions without the written agreement to do so of the City.

33. The First Amendment to the Forbearance Agreement was entered into by the Corporation and the Trustee without the agreement of the City on May 3, 2017. *See* Exhibit 2.

34. The First Amendment changed material terms to the Forbearance Agreement, including the terms of payments due to the City under Section 2.1 of the Forbearance Agreement.

35. The First Amendment to the Forbearance Agreement altered terms to the Forbearance Agreement that were inducements for the City into entering into the Forbearance Agreement and agreeing to dismiss the Fink Litigation.

36. This First Amendment was a violation of the plain language of Section 6.3 of the Forbearance Agreement.

37. Despite the plain language of Section 6.3 of the Forbearance Agreement, the Corporation and the Trustee again modified the terms of the Forbearance Agreement in a Second Amendment to the Forbearance Agreement. *See* Exhibit 3.

38. The Second Amendment to the Forbearance Agreement was never agreed to in writing by the City.

39. The Second Amendment to the Forbearance Agreement further indebted the Corporation to the bondholders in the amount of approximately $388,000.00 for certain capital improvements at the prison.

40. The Second Amendment to the Forbearance Agreement was a violation of the plain language of Section 6.3 of the Forbearance Agreement.

41.     Despite the plain language of Section 6.3, the Corporation held an improperly noticed meeting on January 22, 2019 at which the Corporation and Trustee agreed to a Third Amendment to the Forbearance Agreement without the participation or agreement of the City. *See* Exhibit 4.

42.     The Third Amendment to the Forbearance Agreement extended the term of the Forbearance Agreement without the written agreement of the City.

43.     The Third Amendment to the Forbearance Agreement was a violation of the plain language of Section 6.3 of the Forbearance Agreement.

44.     The meeting notice for the Meeting on January 22, 2019 provided no notice that the Corporation was acting on the Agreement as required under the Rhode Island Open Meetings Act. *See* § 42-46-1 *et seq*.

45.     One of the modification to the Agreement was to extend the term of the Agreement to July 19, 2019 from January 16, 2019.

**CROSSCLAIM I**
**Breach of Contract – Failure to Make Payments Pursuant to the Forbearance Agreement**
*(As against the Corporation)*

46.     Paragraphs 1-45 of these Crossclaims are hereby incorporated by reference as if stated fully herein.

47.     Under Section 2.1 of the Forbearance Agreement, the City was to receive a $100,000.00 payment from the Corporation followed by a series of monthly payments of $16,666.67 up to a total of $800,000.00, provided that the Corporation had met its operational and maintenance expenses each month.

48.     Yet, in August 2017, the Corporation unilaterally ceased making payments without any evidence that it was not meeting its monthly operational and maintenance expenses each and every month thereafter.

49.     This amounts to breach of contract by the Corporation against the interests of the City and it has deprived the City of the payments it is entitled to under the Forbearance Agreement financially damaging the City.

50.     The Forbearance Agreement constituted a contract between the City and the Corporation.

51.     The failure of the Corporation to make payments to the City in accordance with the Forbearance Agreement constitutes breach of contract.

52.     As a direct and proximate result of said breach of the contract, and its concomitant breach of its implied covenant of good faith and fair dealing, Plaintiff has suffered and continues to suffer damages.

53.     WHEREFORE, the City demands judgment against the Corporation in an amount to be determined at trial, sufficient to compensate the City for its damages, interest as provided by law, costs of the action, attorney's fees, and any other relief as this Court deems just and equitable.

**<u>CROSSCLAIM II</u>**
**Breach of Contract – First Amendment to the Forbearance Agreement**
*(As against the Corporation)*

54.     Paragraphs 1-53 of these Crossclaims are hereby incorporated by reference as if stated fully herein.

55.     Section 6.3 of the Forbearance Agreement of the Forbearance Agreement, entitled "Modification," states that the Forbearance entered into by the parties, to which the City is a party, may only be amended or modified "in writing and signed by the parties."

56.     The Trustee and the Corporation breached Section 6.3 on three occasions by amending the Forbearance Agreement without the signature or agreement of the City.

57.     In the First Amendment to the Forbearance Agreement entered into by the Corporation and Trustee on May 3, 2017 whereby the Trustee and Corporation unilaterally altered the terms of the payments to which the City is entitled to under Section 2.1 of the original Forbearance Agreement.  *See* Exhibit 2.

58.     The First Amendment provides that the payments due to the City under Section 2.1 are suspended for 60 days anytime the Corporation makes a shortfall request to the Trustee.  This is a change of a material term to the Forbearance Agreement as these payments were the primary inducement for the City to dismiss the Fink Litigation.

59.     The Forbearance Agreement constituted a contract between the City and the Corporation.

60.     The Corporation's execution of the First Amendment to the Forbearance Agreement without the agreement of the City constitutes breach of contract.

61.     As a direct and proximate result of said breach of the contract, and its concomitant breach of its implied covenant of good faith and fair dealing, the City has suffered and continues to suffer damages.

62.     WHEREFORE, the City demands judgment against the Corporation in an amount to be determined at trial, sufficient to compensate the City for its damages, interest as provided by law, costs of the action, attorney's fees, and any other relief as this Court deems just and equitable.

## CROSSCLAIM III
### Breach of Contract – Second Amendment to the Forbearance Agreement
*(As against the Corporation)*

63. Paragraphs 1-62 of these Crossclaims are hereby incorporated by reference as if stated fully herein.

64. Section 6.3 of the Forbearance Agreement, entitled "Modification," states that the Forbearance entered into by the parties, to which the City is a party, may only be amended or modified "in writing and signed by the parties."

65. The Trustee and the Corporation breached Section 6.3 on three occasions by amending the Forbearance Agreement without the signature or agreement of the City.

66. The Second Amendment to the Forbearance was approved by the Corporation and Trustee without the City's agreement on March 12, 2018. *See* Exhibit 3.

67. This Second Amendment added more debt to the Corporation from the bondholders to build a new fence around the current one.

68. The City did not agree nor did the City sign the amendment, and thus Section 6.3 of the Forbearance Agreement was breached.

69. The Forbearance Agreement constituted a contract between the City and the Corporation.

70. The Corporation's execution of the Second Amendment to the Forbearance Agreement constitutes breach of contract.

71. As a direct and proximate result of said breach of the contract, and its concomitant breach of its implied covenant of good faith and fair dealing, the City has suffered and continues to suffer damages.

72.     WHEREFORE, the City demands judgment against the Corporation in an amount to be determined at trial, sufficient to compensate the City for its damages, interest as provided by law, costs of the action, attorney's fees, and any other relief as this Court deems just and equitable.

## CROSSCLAIM IV
### Breach of Contract – Third Amendment to the Forbearance Agreement
*(As against the Corporation)*

73.     Paragraphs 1-72 of these Crossclaims are hereby incorporated by reference as if stated fully herein.

74.     Section 6.3 of the Forbearance Agreement, entitled "Modification," states that the Forbearance entered into by the parties, to which the City is a party, may only be amended or modified "in writing and signed by the parties."

75.     The Trustee and the Corporation breached Section 6.3 on three occasions by amending the Forbearance Agreement without the signature or agreement of the City.

76.     The Third Amendment to the Forbearance Agreement was also entered into without the agreement of the City on January 16, 2019 to provide a bridge loan to the Corporation, to extend the Term of the initial Forbearance Agreement. *See* Exhibit 4.

77.     The Third Amendment was passed in a meeting which Attorney General Peter Neronha has determined was a violation of the Open Meetings Law.  *See* Exhibit 5.

78.     The City did not agree nor did the City sign the amendment, and thus Section 6.3 of the Forbearance Agreement was breached.

79.     The Forbearance Agreement constituted a contract between the City and the Corporation.

80.     The Corporation's execution of the Third Amendment to the Forbearance Agreement constitutes breach of contract.

81.     As a direct and proximate result of said breach of the contract, and its concomitant breach of its implied covenant of good faith and fair dealing, the City has suffered and continues to suffer damages.

82.     WHEREFORE, the City demands judgment against the Corporation in an amount to be determined at trial, sufficient to compensate the City for its damages, interest as provided by law, costs of the action, attorney's fees, and any other relief as this Court deems just and equitable.

Respectfully Submitted,
Defendants, City of Central Falls,
Mayor Diossa, and the Named Members of
the City Council,

By their attorneys,

*/s/ Nicholas J. Hemond*
Nicholas J. Hemond, Esq. #8782
James G. Atchison, Esq. #7642
DarrowEverett LLP
One Turks Head Place, 12th Floor
Providence, RI 02904
T: (401) 453-1200
April 23, 2019           nhemond@darroweverett.com
jatchison@darroweverett.com


*/s/ Matthew T. Jerzyk*
Matthew T. Jerzyk, Esq. #7945
City Solicitor
Central Falls City Hall
580 Broad Street
Central Falls, RI 02863
T: (401) 616-2435
MJerzyk@CentralFallsRI.us

## CERTIFICATION

I hereby certify that on the 23rd day of April, 2019, I filed and served this document through the Electronic Filing System on the following parties on record:

Adrienne K. Walker (Pro Hac Vice)
William W. Kannel (Pro Hac Vice)
One Financial Plaza
Boston, MA 02111
akwalker@mintz.com
wkannel@mintz.com

Robert M. Duffy
Duffy & Sweeney, Ltd.
321 South Main Street, 4th Floor
Providence, RI 02903
rduffy@duffysweeney.com

Brian J. Lamoureux
William E. O'Gara
Pannone Lopes Devereaux & O'Gara LLC
Northwoods Office Park
101 Atwood Avenue, Suite 215 N
Johnston, RI 02919
bjl@pldolaw.com
wogara@pldolaw.com

William M. Dolan, III
William K. Wray, Jr.
Adler Pollock & Sheenan
One Citizens Plaza, 8th Floor
Providence, RI 02903
wdolan@apslaw.com
wwray@apslaw.com

The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Filing System.

/s/Susan Loporchio