## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UMB BANK, N.A., as Trustee | : | |
|     Petitioner and Plaintiff, | : | |
| | : | |
|     v. | : | C.A. No. 19-182WES |
| | : | |
| CITY OF CENTRAL FALLS, et al., | : | |
|     Defendants. | : | |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Pending before the Court is the motion of non-party AVCORR Management LLC ("AVCORR") to intervene in this case pursuant to Fed. R. Civ. P. 24(a) and (b). ECF No. 72. AVCORR seeks leave to intervene based on its interest as a judgment creditor of Defendant Central Falls Detention Facility Corporation ("CFDFC") arising from its $1.2 million judgment dated July 1, 2020, entered in a 2012 case that had been pending in the Rhode Island Superior Court. AVCORR alleges that its interest is intertwined with the claims brought by Petitioner UMB Bank, N.A, ("UMB") against CFDFC in this case. UMB and CFDFC oppose intervention, whether as of right or permissively. The motion is now ripe for determination.[1] For the reasons that follow, the motion to intervene is denied.

---

[1] The motion to intervene was referred to me for determination. Courts disagree whether a motion to intervene is non-dispositive and may be dealt with pursuant to 28 U.S.C. § 636(b)(1)(A) or whether it is more analogous to the excepted motions, requiring it to be the subject of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Compare North Dakota v. Heydinger, No. 11-cv-3232 (SRN/SER), 2013 WL 593898, at *1 (D. Minn. Feb. 15, 2013) (magistrate judge order denying motion to intervene reviewed for clear error) and Kukui Gardens Corp. v. Holco-Capital Grp., Inc., 261 F.R.D. 523, 527 (D. Haw. 2009) (motion to intervene properly decided as non-dispositive motion), with Meeks v. Schofield, No. 3:12-cv-545, 2013 WL 1826438, at *2 (M.D. Tenn. Apr. 30, 2013) (magistrate judge order denying motion to intervene reviewed as report and recommendation). Here, AVCORR seeks to intervene to collect a judgment entered in a state court matter, while this case is narrowly focused on ensuring that CFDFC's board of directors and the City of Central Falls (and its mayor and council) operate the Wyatt Detention Facility and manage CFDFC's other assets consistent with applicable law. There are no issues dispositive of any right or claim of AVCORR at stake in this case. Accordingly, I address the motion in this memorandum and order, as it was referred.

I.      **Background**

In October 2012, AVCORR sued CFDFC in the Superior Court claiming breach of contract and related claims.  ECF No. 72 at 2.

More than six years later, while AVCORR's case was still pending in Superior Court, on April 10, 2019, UMB filed suit in this Court against CFDFC, members of its board of directors, and the City of Central Falls, its mayor and members of its city council.  ECF No. 1.  UMB's complaint sought appointment of a Receiver and injunctive relief to protect itself as Trustee for CFDFC's bondholders (whose first priority lien against all of CFDFC's assets allegedly then exceeded the value of the collateral) from imminent harm due to specific actions of Defendants in seeking to terminate certain CFDFC contracts and to close the Wyatt Detention Facility, CFDFC's principal asset.[2]  Id.  As reflected in the complaint and as described in the extensive media coverage both prior to and following the filing of the lawsuit,[3] UMB's decision to file had been triggered by a politically explosive effort by the City of Central Falls and members of the CFDFC board to suspend its contract with United States Immigration and Customs Enforcement ("ICE"), remove ICE detainees and close the facility.  Id.  The case was and remains laser-focused on safeguarding the Wyatt Detention Facility and its ongoing operations consistent with applicable law.  The complaint specifically eschewed the remedy of liquidation of CFDFC's

---

[2] UMB also sought damages from each of the Defendants based on the attorney's fees it expended in bringing the action, as well as the injury to CFDFC and its assets arising from the challenged actions.

[3] See, e.g., Bondholders sue to keep ICE detainees in Wyatt, The Providence Journal, Apr. 10, 2019, https://www.providencejournal.com/story/news/2019/04/11/bondholders-sue-to-keep-ice-detainees-in-wyatt/5393941007/; Bondholders sue Central Falls, aiming to keeping ICE detainees at Wyatt, WPRI.COM12, Apr. 11, 2019, https://www.wpri.com/news/local-news/blackstone-valley/bondholders-sue-central-falls-aiming-to-keep-ice-detainees-at-wyatt/; The Wyatt Detention Facility: How We Got Here, The Publics Radio, Apr. 12, 2019, https://thepublicsradio.org/article/the-wyatt-detention-facility-how-we-got-here-; $130M Showdown: Bondholders File Federal Lawsuit to Force Wyatt Detention Into Receivership, GOLOCALProv, Apr. 11, 2019, https://www.golocalprov.com/news/130m-show-down-bondholders-file-federal-lawsuit-to-force-wyatt-detention-in; Wyatt Board suspends ICE contract for 90 days; Detainees need to be moved out in seven days, Uprise RI, Apr. 6, 2019, https://upriseri.com/2019-04-06-wyatt/.

assets; nor did it ask the Court to oversee asset distribution nor to adjudicate priorities among CFDFC's creditors.  ECF No. 1 at 2, 30 & ¶¶ 152, 161 ("[t]he Trustee seeks to protect the value of its Collateral" and "to ensure that the Collateral is preserved, protected, and operated effectively"; "[t]he Trustee does not seek to liquidate [CFDFC]") (emphasis added).  Thus, it is simply inaccurate to posit, as AVCORR contends, that UMB's success in this case would result in "much if not all of CFDFC's assets . . . used to satisfy only [UMB]'s indebtedness."  ECF No. 72 at 5.

Following a brief period of intensive court-annexed mediation presided over by me, on April 26, 2019, the parties settled their differences with respect to interim injunctive relief. Pursuant to the settlement, the Court entered two Orders.  First, the Court granted a preliminary injunction ordering the CFDFC board of directors to rescind the actions challenged by the complaint; otherwise, this Order provides that the CFDFC directors would continue to manage CFDFC pursuant to R.I. Gen. Laws §§ 45-54-1, *et seq.*  ECF No. 47.  Second, the Court appointed a special master, not to oversee CFDFC, but rather for the strictly limited purpose of assisting the parties with responding to disputes without the need for intervention by the Court arising from any action by the CFDFC board that might impair CFDFC's assets or revenue.  ECF No. 48.  Pursuant to the settlement, UMB's request for a Receiver was not granted, UMB ceased to press for the imposition of a Receiver and further litigation was stayed.

Since that time, the Court has repeatedly extended the stay of the litigation and the special master appointment leaving CFDFC to manage itself during the crisis of the COVID-19 pandemic.  By agreement of the parties, the stay and the special master appointment are now set to terminate on January 25, 2023.  ECF No. 70.  As of this writing, pursuant to a joint motion of all parties, the Court will again review the status on January 4, 2023.  Meanwhile, since April

2019, the settlement has held – there has been no need for judicial intervention and neither the parties nor the Court have expended resources on litigating this case.

A little over a year after this case was substantially settled, on July 1, 2020, back in the Superior Court, AVCORR's 2012 litigation against CFDFC finally terminated in a stipulated judgment in favor of AVCORR in the amount of $1.2 million.  ECF Nos. 72-1 and 2.  AVCORR represents that this judgment remains unsatisfied and that UMB has taken the position that it has priority over other CFDFC creditors, including AVCORR.  See ECF Nos. 72 at 5-6; 76 at 2.  In its intervention motion, AVCORR argues that "upon information and belief," when it settled with CFDFC in July 2020, CFDFC was acting in concert with UMB, and that UMB and CFDFC "may" have engaged in "inequitable conduct, which could result in an equitable subordination of the Trustee's claim to that of AVCORR's judgment claim."  ECF No. 80 at 3 n.2.  AVCORR represents that the purpose of its intervention in this case is so that its judgment claim will be "considered in this matter" or this Court will "litigate the priority of said claim herein."  Id. at 3.

AVCORR makes clear that, if allowed to intervene, it intends to use this case as a vehicle for it to pursue discovery; it plans to ask this Court to make factual findings and draw legal conclusions in connection with its theory of equitable subordination.  ECF No. 80 at 4, 6.  AVCORR acknowledges that, at any time since it reduced its claim to a judgment almost two and a half years ago, it could, for example, have undertaken supplementary process, litigation in aid of execution or the appointment of a receiver in the Superior Court.[4]  Id. at 3-4.  Yet AVCORR hyperbolically argues that, without intervention, it would "likely be impeded from ever collecting on its judgment," though its motion does not explain this extraordinary representation.  ECF No. 72 at 5.  Apart from a copy of the Superior Court judgment and the

---

[4] Consistent with this concession by AVCORR, UMB points out that AVCORR apparently has been pressing supplementary proceedings in the Superior Court to collect its judgment.  ECF Nos. 78-1, 78-2.

Superior Court order entering the judgment, ECF Nos. 72-1, 72-2, AVCORR failed to comply with the Fed. R. Civ. P. 24(c) requirement that a proposed intervenor must attach a copy of the pleading setting out the claim for which intervention is sought.

Despite the public media fanfare prior to, at the time of, and following the public filing of this case, in its motion to intervene, AVCORR represented to the Court that its motion to intervene was timely because "[it] was not made aware of the instant action until very recently." ECF No. 72 at 2; see id. at 4 ("AVCORR only learned of the existence of the pending litigation on August 12, 2022"). Then, during a hearing on AVCORR's opposition to the motion of UMB and CFDFC for a brief extension to respond to the motion to intervene, AVCORR advised the Court that it was withdrawing this representation because it is not accurate, noting that AVCORR had recently changed counsel and that it was the new attorneys, not AVCORR, who had lacked awareness of this litigation "until very recently." On Reply, AVCORR conceded that its prior attorneys were "arguably put on reasonable notice" of this case at least as early as November 2021, almost a year before it filed this motion to intervene. ECF Nos. 80 at 3 n.1. Yet the attorneys represent to the Court that AVCORR still "maintains that it did not become aware of this matter at that time [November 2021]." Id. As of this writing, AVCORR has provided the Court with nothing to factually support this representation.

## II.     Applicable Law and Analysis

### A.     Fed. R. Civ. P. 24 – Timeliness

The Court's analysis begins by focusing on the prerequisite regarding which AVCORR has stumbled badly – the threshold requirement of a "timely motion." Fed. R. Civ. P. 24(a) & (b). "[W]hen intervention is at issue, timeliness is the 'prevenient question.'" R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 7 (1st Cir. 2009) (quoting Banco Popular de

Puerto Rico v. Greenblatt, 964 F.2d 1227, 1230 (1st Cir. 1992)) (explaining that "timeliness

stands as a sentinel at the gates whenever intervention is requested and opposed").  Timeliness is

"inherently fact-sensitive and depends on the totality of the circumstances."  Id.  Case law

> reflects four factors that inform the timeliness inquiry: (i) the length of time
> that the putative intervenor knew or reasonably should have known that his
> interests were at risk before he moved to intervene; (ii) the prejudice to
> existing parties should intervention be allowed; (iii) the prejudice to the
> putative intervenor should intervention be denied; and (iv) any special
> circumstances militating for or against intervention.

Id.  In evaluating this "mosaic, the status of the litigation at the time of the request for

intervention is highly relevant;" if the case has progressed "toward its ultimate conclusion, the

scrutiny attached to a request for intervention necessarily intensifies."  Id. (internal quotation

marks omitted).  "A motion to intervene is timely if it is filed promptly after a person obtains

actual or constructive notice that a pending case threatens to jeopardize his rights."  Id. at 8.

In the circumstances here, AVCORR was still locked in litigation with CFDFC when

UMB filed this case.  In light of the extremely public nature of the filing, the flurry of media

coverage that preceded and followed the filing, and based on my participation in the proceedings

as court-annexed mediator, I find that it would amount to willful blindness for AVCORR to have

been unaware that UMB, CFDFC and the City of Central Falls had joined in this lawsuit for the

targeted purpose of compelling the board and the City to rescind actions taken to prevent the

Wyatt Detention Facility from holding ICE detainees and to impose the oversight of a Receiver

to compel that goal to be accomplished.  See Caterino v. Barry, 922 F.2d 37, 41 (1st Cir. 1990)

(affirming "trial court's . . . refus[al] to allow the individual applicants to evade, through

personal ignorance, the repercussions of dilatory action on the part of their group representative

– at least when the individuals, as in this case, had the opportunity to learn of the lawsuit through

the press or other public means"); Puerto Rico Tel. Co. v. San Juan Cable, LLC, 298 F.R.D. 28,

34 & n.1 (D.P.R. 2014) (when "legal battle that ensued between the parties was widely documented by the media" and basic internet search results in "numerous articles, opinions, case summaries, public court documents of the instant case, and previous proceedings" court may "safely infer that [the movant] reasonably should have known of th[e] litigation at a much earlier stage") (internal quotation marks omitted).

Further, I find, as AVCORR concedes, that, by November 2021, approximately a year and four months after it had become CFDFC's judgment creditor, its then attorneys were "put on reasonable notice of this matter." ECF No. 80 at 3 n.1. AVCORR's lingering contention (unsupported by any declaration or affidavit) that it somehow was not aware of this case despite its attorneys' knowledge is singularly lacking in credibility, particularly in light of AVCORR's initially having made what it has admitted on the record was an inaccurate statement regarding timeliness in its written filing in the Court.[5] Accordingly, I conclude that, before filing its intervention motion, AVCORR delayed more than two years after it became a judgment creditor aware that a lawsuit had been brought by UMB seeking the imposition of a receiver, and then delayed approximately eleven months more after its attorneys were specifically alerted to pendency of this case.

The second and third R & G factors require that the Court assess the prejudice to existing parties should intervention be allowed and the prejudice to the intervenor should intervention be denied. R&G Mortg. Corp., 584 F.3d at 7. In that regard, it is pertinent that the receivership

---

[5] During the interim hearing on AVCORR's opposition to a brief extension of the deadline for UMB and CFDFC to prepare their oppositions to the motion to intervene, AVCORR offered to refile its motion with this representation removed. The Court declined that offer as unnecessary, particularly as AVCORR's reply was yet to be filed. The Court is compelled to observe that AVCORR's written representations in its opposition to the extension are troubling to the extent that they appear to this judicial officer as lacking an appropriate foundation in law or fact. For example, AVCORR represented that a short extension should be denied because its need to intervene was "exigent." ECF No. 76 at 3. This representation clashes materially with reality – that this case was largely settled in April 2019 and has since been stayed, as well as that the determination of claim priority among creditors is not in issue in this case.

sought by UMB was not for the purpose of winding up CFDFC's business or to establish priorities between creditors like AVCORR and UMB.  Rather, as is clear from the face of UMB's complaint and subsequent proceedings in this case, UMB asked for a receiver for the special purpose of protecting CFDFC's ongoing business operations from the allegedly politically-motivated actions of the board in rescinding the ICE contract and seeking to close the Wyatt Detention Facility.  Further, as a result of intensive court-annexed mediation, by April 26, 2019, the parties had reached a partial settlement agreement pursuant to which the Court entered the preliminary injunction and stayed the case.  Based on the settlement, CFDFC has continued to operate under the direction of its board of directors, with a special master solely to facilitate dispute resolution.  Since then, the settlement has held in that the case has been stayed for more than two years as CFDFC managed the operations of the Wyatt Detention Facility through the COVID-19 crisis without the need for any intervention by the Court or the special master.

Mindful of these circumstances, I find that AVCORR's intervention would inflict substantial prejudice on the existing parties by converting a long-stayed, largely-settled case into a legally and factually complex collection action in which the Court will have to oversee the discovery AVCORR says it plans to seek, potentially liquidate CFDFC assets, and make determinations of claim priority to decide whether AVCORR's judgment can be satisfied before the sums owed to bondholders are paid, including whether inequitable conduct has altered claim priority.  Nor would AVCORR be prejudiced by the denial of intervention.  This case involves a claim by UMB for a narrowly tailored injunction that has been in place for two and a half years, as well as, potentially, a judgment to cover its damages (attorney's fees in pursuing this action and compensation for any injury to CFDFC caused by Defendants' challenged actions).  UMB sought only to protect CFDFC's ongoing business operations from the loss of its ICE contract

and from being abruptly closed, which is consistent with, not adverse to, AVCORR's interest in collecting its CFDFC judgment. The absence of prejudice to AVCORR is confirmed by the passage of more than two years since AVCORR became a judgment creditor without any such adverse consequence accruing.

The final R & G factor asks the Court to consider whether there are any special circumstances militating for or against intervention. R&G Mortg. Corp., 584 F.3d at 7. In this regard, mindful that, through the court-annexed mediation, the most contentious issues were settled in April 2019 and the partial settlement has been successful in that this case has since been stayed, I am troubled that AVCORR's true reason for seeking to intervene after such a long delay is to create enough disruption to pressure CFDFC and UMB to pay its judgment. In that regard, it is pertinent to consider that a motion to intervene like this one, which would have the effect of reopening this largely settled case, should be regarded with particular skepticism. See In re Lease Oil Antitrust Litig., 570 F.3d 244, 249-50 (5th Cir. 2009) (intervention in case with settlement permitted because it would not reopen or impact the settlement); Sokaogon Chippewa Community v. Babbitt, 214 F.3d 941, 945, 948 (7th Cir. 2000) (waiting until settlement was imminent to file motion to intervene "strongly suggests" tactical attempt to thwart the settlement rather than to participate in the litigation) (internal quotation marks omitted). As in Sokaogon Chippewa Community, the circumstances here are strongly suggestive that AVCORR's attempted intervention is a tactical move to pressure the parties to resolve its unrelated judgment by sowing chaos in this stayed and quiescent case. This is a special circumstance that augurs strongly against intervention.

Based on the foregoing, whether intervention is analyzed as of right or permissively, I find that AVCORR's motion to intervene is seriously and prejudicially untimely.  Therefore, it is denied.

### B.      Fed. R. Civ. P. 24(a) – Intervention as of Right

While not necessary in light of my finding that AVCORR's motion is untimely, I also have considered Fed. R. Civ. P. 24(a) intervention and find that, apart from the untimeliness of the motion, AVCORR has failed to establish that it is entitled to intervene as of right.

To prevail on a motion to intervene as of right, putting aside timeliness, a proposed intervenor must demonstrate a concrete interest in the pending action, a realistic threat that resolution of the pending action will hinder its ability to effectuate that interest, and the absence of adequate representation by any existing party.  Sec. & Exch. Comm'n v. LBRY, Inc., 26 F.4th 96, 99 (1st Cir. 2022).  "A failure to satisfy any one of these . . . requirements is sufficient grounds to deny a request for intervention as of right."  Id.  The "inherent imprecision of Rule 24(a)(2)'s individual elements dictates that they be read not discretely, but together, and always in keeping with a commonsense view of the overall litigation."  Maguire v. FMR LLC, C.A. No. 16-499 S, 2016 WL 6998622, at *2 (D.R.I. Nov. 30, 2016) (internal quotation marks omitted).  AVCORR fails on every element.

While AVCORR clearly is interested in pursuing litigation in aid of execution, including to initiate discovery and to challenge UMB's claim to priority over it as a judgment creditor, that is an interest that simply is not at issue in this case.  This litigation was not brought for the purpose of liquidating CFDFC and distributing its assets to creditors or to establish priority among creditors; indeed, UMB expressly eschewed such a goal in the Introduction to its complaint.  Therefore, AVCORR has failed to establish either that it has a concrete interest in the

10

pending action, or that there is a realistic threat that resolution of the pending action will hinder its ability to effectuate that interest.  Sec. & Exch. Comm'n, 26 F.4th at 99.  Further, as UMB and CFDFC correctly point out, AVCORR's only potential interest in the outcome of this case is actually aligned with UMB's now-accomplished goal of protecting CFDFC's ICE contract from rescission and protecting the operations of the Wyatt Detention Facility in that, as a judgment creditor of CFDFC, it is in the interest of AVCORR for the Wyatt Detention Facility to continue to operate.  Thus, AVCORR's only conceivable concrete interest is more than adequately represented by UMB.

AVCORR cites U.S. Fid. & Guar. Co. v. E. Contractors, Inc., Civil Action No. 06-11088-RWZ, 2008 WL 190758 (D. Mass. Jan. 15, 2008), appeal dismissed, 578 F.3d 45 (1st Cir. 2009), in support of its argument that it is entitled to intervention as of right.  However, the circumstances presented by AVCORR's motion are profoundly different from the circumstances in U.S. Fid. & Guar. Co., where the proposed intervenor established that it had a concrete claim to real estate that was found to be "similarly situated" to the claim of a party to the lawsuit, which had used the pending case to obtain an *ex parte* attachment.  Id. at *1-2.  As pertinent here, U.S. Fid. & Guar. Co. holds only that intervention of right requires a rigorous examination (looking at both facts and law) of the concrete interest of the intervenor in the pending case.  It does not support AVCORR's intervention effort.

Based on this "commonsense view of the overall litigation," I find that AVCORR has failed to meet any of the requirements for intervention as of right.  See Maguire, 2016 WL 6998622, at *2 (internal quotation marks omitted).  In addition to its untimeliness, AVCORR's motion to intervene as of right is also denied for this reason.

**C.**     **Fed. R. Civ. P. 24(b) – Permissive Intervention**

While also unnecessary due to the untimeliness of AVCORR's motion, I have briefly examined whether permissive intervention pursuant to Fed. R. Civ. P. 24(b) is appropriate. Rule 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." In exercising its discretion whether to permit permissive intervention, the Court "must consider whether intervention will unduly delay or prejudice the adjudication of the" rights of the original parties. Id. at (b)(3). In its motion, AVCORR alleges that claim priority as among itself, UMB, and other CFDFC creditors and CFDFC's failure to pay its debts when due are the "common question[s] of law or fact" that make permissive intervention appropriate. ECF No. 72 at 6. However, that is simply wrong – UMB's complaint, the partial settlement and the subsequent course of this litigation do not put in issue or call for a determination either of claim priority or of CFDFC's payment of debts as they come due. Mindful that AVCORR's intervention would significantly delay this case and adversely impact the parties by tipping over the partial settlement and opening active discovery in pursuit of judicial findings on matters that are presently not in issue, I deny AVCORR's motion seeking permissive intervention not only because it is not timely but also for this independent reason.

## III.   Conclusion

Based on the foregoing, AVCORR's Fed. R. Civ. P. 24 motion to intervene (ECF No. 72) is DENIED.[6]

---

[6] UMB and CFDFC also appropriately argue that, depending on how AVCORR's claim is aligned, it may defeat subject matter jurisdiction over the case. See 28 U.S.C. § 1367(b) (federal court cannot exercise supplemental jurisdiction over state law claim of intervenor in case pending in federal court based on diversity jurisdiction unless it also meets jurisdictional requirements). Because AVCORR failed to comply with its Fed. R. Civ. P. 24(c) obligation to file a pleading articulating its claim, including the basis for subject matter jurisdiction, the Court was unable to perform this analysis.

So ordered.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 7, 2022